UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESUS VIDAL MARTINEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> U.S. IMMIGRATION AND CUSTOMS ) <br> ENFORCEMENT, and U.S. ) <br> DEPARTMENT OF HOMELAND ) <br> SECURITY, ) <br> ) <br> Defendants. ) | No. 20 C 7772 <br><br> Judge Kennelly |

**DECLARATION OF FERNANDO PINEIRO**

## I. INTRODUCTION

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Acting FOIA Officer of the Freedom of Information Act Office ("ICE FOIA Office") at U.S. Immigration and Customs Enforcement ("ICE"). The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. I have held this position since July 10, 2019, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a (the "Privacy Act"), and other applicable records access statutes and regulations. Prior to holding this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013 to July 9, 2019, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS").

2. My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office, which is responsible for the receipt of, processing of,

and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In that capacity, I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

3. I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4. This declaration describes the process by which ICE received Plaintiff's FOIA requests and searched for, processed, and disclosed responsive records.

5. Additionally, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration describes the portions of records ICE withheld in response to Plaintiff's FOIA request and the basis for ICE's withholdings pursuant to FOIA Exemptions (b)(5), (b)(6), and (b)(7)(C). Attached as **Exhibit 1** is the *Vaughn* index, which completely and accurately describes the witholdings challenged by the Plaintiff and the bases for the withholdings:

## II. PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUESTS AND THE INSTANT LITIGATION

6. Plaintiff submitted his first FOIA request to ICE on October 9, seeking "any and all email communications and other notes or reports between ICE (including but not limited to Officer Miguel Rodriguez & ICE Office of the Chief Counsel and Decatur County Sheriff (Indiana), or any officials from the Decatur County Superior Court related to Jesus Vidal-Martinez (A215 722 040) and Decatur Superior Court cause number 16D01-1911-CM-001458–these

communications would have occurred between August 5, 2020 and September 25, 2020, and the email communications between McHenry County Jail and ICE or Clay County Detention Center and ICE with respect to the transfer of Mr. Vidal from McHenry county to Clay county which took place on or about September 22 or September 23, 2020."

7. In a letter to Plaintiff dated November 13, 2020, the ICE FOIA Office acknowledged receipt of the FOIA request dated October 9, 2020 and assigned it ICE FOIA case number 2021-ICFO-09980.

8. On November 13, 2020, the ICE FOIA Office tasked the ICE Office of Enforcement and Removal Operations ("ERO") to conduct a search for responsive records.

9. On December 29, 2020, Plaintiff filed the Complaint in this action.

10. Plaintiff submitted a second FOIA request to ICE on December 30, 2020 (second FOIA request), seeking "ICE's intra-agency communication—all communications between ICE officials (whether ICE-ERO or ICE-OCC)—related to Jesus Vidal-Martinez (A215 722 040) and his transfer under a writ related to Decatur Superior Court case number 16D01-1911-CM-001458-these communications would have occurred between August 5, 2020 and September 25, 2020. We are also requesting the (Enforcement Integrated Database) EID file associated with Mr. Vidal-Martinez."

11. In a letter to Plaintiff dated February 11, 2021, the ICE FOIA Office acknowledged receipt of the second FOIA request, and assigned it ICE FOIA case number 2021-ICFO-26673.

12. Though the ICE FOIA Office acknowledged receipt of the second FOIA request on February 11, 2021, it had earlier tasked the ICE Office of the Principal Legal Advisor ("OPLA") on February 3, 2021, to conduct a search for responsive records.

3

13. On February 19, 2021, Plaintiff filed an Amended Complaint with the Court, adding the second FOIA request to the litigation.

14. On March 12, 2021, ICE made a production of responsive records to Plaintiff, consisting of 322 pages subject to various FOIA Exemptions including FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

15. On April 9, 2021, ICE made a second production of responsive records to Plaintiff, consisting of 239 pages subject to various FOIA Exemptions including FOIA Exemptions (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). On August 23, 2021, ICE discretionarily reconsidered (b)(5) FOIA exemptions that it had asserted on communications between ICE and a Decatur County Indiana, state's attorney and released the contents of those communications to Plaintiff.

### III. ORGANIZATION OF ICE'S *VAUGHN* INDEX

16. Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* index accompanies this declaration providing a description of each redaction and applicable exemption in the pages that are at issue.

17. The *Vaughn* index is in a table format. The first row contains the following heading titles: PDF Page Number(s); Bates Stamp Page Number(s); Withholding: Full/Partial; Description of Records and Redactions and Reasons for Redactions; and Exemption(s) Applied.

18. The first heading, PDF Page Number(s), refers to the specific page contained in a compilation of the pages that are being challenged by the Plaintiff, and range from 1-51. The second heading, Bates Stamp Page Number(s), refers to the bates stamp page number at the bottom of each page, which corresponds to the location of a specific page within the complete corpus of records produced to Plaintiff. The third heading, Full/Partial Withholding, refers to the level of withholdings taken on the documents. The information below the fourth heading, Description of

Records and Redactions and Reasons for Redactions, describes the redacted information and the justification for redaction. The fifth heading, Exemption(s) Applied, describes the exemptions applied to the redactions in the documents.

## IV. DESCRIPTION OF THE RECORDS AT ISSUE

19. At issue in this case are 51 pages of emails responsive to Plaintiff's FOIA requests. *See* Docket Entry 20 (Joint Status Report) at Section 3 (B) (limiting the issues to the redactions in these 51 pages). Of the 51 pages, all 51 were subject to partial withholding. The witheld portions of the emails are communications between and among ICE attorneys, ICE ERO deportation officers, and an assistant United States attorney (AUSA). At the time of the emails, ICE had pending immigration proceedings against Jesus Vidal-Martinez, who was in custody and litigating a related petition for habeas corpus. The withheld portions of the emails were written in contemplation of this litigation and contain thoughts, strategy, and analysis relating to those cases.

20. A complete description of the 51 pages of records identified by Plaintiff, and the bases for the withholding of information in said documents, are detailed in ICE's *Vaughn* Index.

## V. APPLICABLE FREEDOM OF INFORMATION ACT WITHHOLDINGS

### FOIA Exemption (b)(5)

21. Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. The information that ICE has withheld under FOIA Exemption (b)(5) is protected by the deliberative process privilege, the attorney work product privilege, and the attorney-client privilege.

22. All of the (b)(5) withholdings at issue are redactions of information exchanged between and among ICE attorneys, ICE deportation officers, and an AUSA in contemplation of litigation regarding Jesus Vidal-Martinez, specifically including the pending immigration proceedings against Jesus Vidal-Martinez and his related petition for habeas corpus. All of the

information withheld under Exemption (b)(5) is thus protected from disclosure under the attorney work product doctrine. The withheld information was prepared for the purpose of advancing the pending litigation and contains thoughts, strategy, and analysis.

23. ICE also determined that the deliberative process privilege applies to all of the redacted communications. The contents of the discussions and deliberations are pre-decisional in nature because they were prepared in order to assist a decisionmaker in making a final decision. They are deliberative because they occurred during the course of consultative processes and the facts and options discussed in the communications are selective in nature and highlight the portions of records that were deemed pertinent to recommendations and decisions. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This would result in a chilling effect on intra- and inter-agency communications. ICE employees must be able to discuss proposed agency action frankly to accomplish the agency's mission in an efficient manner.

24. Finally, a subset of the redacted communications are additionally protected by the attorney-client privilege. These are confidential communications (1) between ICE attorneys and client ICE ERO deportation officers and (2) between an AUSA and client ICE employees. These communications all concern Mr. Vidal-Martinez's administrative removal proceeding and the pending habeas case, and they provide confidential advice to the client about recommended actions and legal decisions. Specifically, on pages Bates-numbered 326, 328-330, 332, 334, 338, 372, 383, 422-423, 425, 436, 439, 451, 458, 506-509, 534-535, 554, and 570, the Assistant Chief Counsel (ACC) and a Deputy Chief Counsel (DCC) are discussing with their clients – ERO Deportation Officers – legal and law enforcement strategies, the contents of and proposed revisions to draft legal documents, and pertinent facts related to Mr. Vidal-Martinez's immigration case.

6

ICE attorneys provide legal advice, legal recommendations, legal oversight, and are ultimately the agency representatives in Court with respect to administrative immigration court matters and in representing the agency to DOJ regarding habeas cases. On pages 575-576, an AUSA is discussing a draft of a legal document with ICE counsel. Disclosure of these communications would have a chilling effect on interactions and communications between agency employees and their legal counsel, and between agency counsel and DOJ attorneys that represent the agency.

### FOIA Exemption 5 U.S.C. § 552(b)(7) Threshold

25. The FOIA, 5 U.S.C. § 552(b)(7), establishes a threshold requirement that to withhold information on the basis of Exemption (b)(7), the records or information must be compiled for law enforcement purposes. The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS and the second largest investigative agency in the federal government. ICE is responsible, among other duties, for identifying and eliminating vulnerabilities within the nation's borders. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries. ICE is responsible for enforcing the nation's immigration laws and identifying and eliminating vulnerabilities within the nation's borders.

26. The ICE ERO directorate oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal

7

aliens from the United States. Within ICE, ERO has broad authority and prioritizes the apprehension, arrest, and removal of convicted criminals. ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release. ERO comprises seven headquarters divisions, 24 Field Offices, and more than 7,600 employees.

27. The Office of the Principal Legal Advisor (OPLA) is the largest legal program in DHS, with over 1,250 attorneys and 290 support personnel. By statute, OPLA serves as the exclusive representative of DHS in immigration removal proceedings before the Executive Office for Immigration Review, litigating all removal cases including those against criminal aliens, terrorists, and human rights abusers. OPLA also provides a full range of legal services to ICE programs and offices. OPLA provides legal advice and prudential counsel to ICE personnel on their customs, criminal, and immigration law enforcement authorities, the Freedom of Information Act and Privacy Act, ethics, liability under the Federal Tort Claims Act, and a range of administrative law issues, such as contract, fiscal, and employment law. OPLA attorneys provide essential support to the Department of Justice in the prosecution of ICE cases and in the defense of ICE's authorities in federal court. In addition to its headquarters in Washington, D.C., OPLA has 25 field locations with a presence in more than 60 offices throughout the United States.

28. The ICE information at issue in this case was compiled by ICE because it relates to ICE's obligation to enforce the immigration laws of the United States by investigating non-U.S. individuals who may be illegally present in the United States, including records of interviews, arrest, booking, detention, removal, and other related investigations. Therefore, all of the ICE emails responsive to Plaintiffs' FOIA request, which pertain to the detention and removal of Mr.

Vidal-Martinez, were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption (b)(7).

**FOIA Exemptions 5 U.S.C. § 552(b)(6) & (7)(C)**

29. FOIA Exemption (b)(6), 5 U.S.C. § 552(b)(6), protects from disclosure matters that are "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

30. FOIA Exemption (b)(7)(C), 5 U.S.C. § 552(b)(7)(C), protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

31. When asserting FOIA Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in the disclosure of the information and shedding light on ICE's performance of its statutory duties.

32. Here, ICE applied FOIA Exemption (b)(6) in conjunction with Exemption (b)(7)(C) to protect from disclosure the names, initials, signatures, phone numbers, email addresses, and suite numbers of federal law enforcement officers and other government employees that are found in the documents.

33. The federal employees referenced in the responsive records assist ICE with its law enforcement mission. ICE recognizes that these federal employees have privacy interests in not becoming targets of harassment by individuals who may begrudge them and in remaining free of interference in the performance of their duties by persons who are currently of interest to law enforcement or who oppose the ICE mission.

9

34. Public identification of these employees could also result in them being subjected to personal requests for access to law enforcement information or requests for information about ongoing or closed investigations.

35. Names, phone numbers, and email addresses of non-ICE individuals, such as DOJ attorneys and Decatur County employees, were also redacted from the responsive documentation. The disclosure of such third-party information could constitute an unwarranted invasion of personal privacy and similarly subject these individuals to harassment, and undue public attention.

36. Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in the disclosure of the information for purposes of shedding light on the operations and activities of ICE in the performance of its statutory duties. In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual or other personally identifiable information. This information, if released, would not shed further light as to the operations or activities of ICE. Plaintiff has failed to articulate any public interest that could be advanced by releasing the personally identifiable information of the individuals in question. Plaintiff's personal interest in obtaining the records does not factor into the analysis conducted by ICE.

37. Based upon the traditional recognition of strong privacy interests in law enforcement records, the categorical withholding of third-party information identified in law enforcement records is appropriate. Moreover, the third parties identified in these records have not provided consent to the release of their personally identifying information as required by 6 C.F.R. §§ 5.3(a) & 5.21(d).

10

## VI. SEGREGABILITY

38. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

39. ICE conducted a line-by-line review to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

40. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

**JURAT CLAUSE**

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct to the best of my knowledge and belief.

Signed this 27th day of August, 2021.

_____
Fernando Pineiro, Acting FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

| PDF Page Number(s) | Bates Stamp Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|---|
| 1-3, 6-8, 15, 19-20, | 21, 49-50, 79-80, 84, 124, 230, 235, | Partial | **Description of the Records:** Emails containing communications between an ICE Assistant Chief Counsel (ACC) and a Decatur County Prosecutor.<br><br>**Description of Redactions:** The information being withheld contains personally identifiable information ("PII") of employees (including their names and contact information such as phone number and/or email address). This information was withheld under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reasons for Redactions:** FOIA exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of law enforcement ("LE") personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting law enforcement personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. In addition, no one consented to the disclosure of their PII and the personal interest of plaintiff is not considered. | Freedom of Information Act 5 U.S.C. § 552 (b)(6), (b)(7)(C) |

| 4-5, 9-18, 43-46, 51 | 77-78, 91-93, 99, 107, 119, 124, 139, 161, 220, 540, 542-543, 553, 577 | Partial | **Description of the Records:** Emails containing communications between an ICE Assistant Chief Counsel and his supervisor, an ICE Deputy Chief Counsel (DCC).<br><br>**Description of Redactions:** The information being withheld contains attorney work product that was shared between government attorneys, which is subject to Exemption (b)(5). The purpose of this FOIA Exemption is to protect documents prepared by an attorney during litigation. The withheld information here relates to on-going and active litigation(s). Specifically, Jesus Vidal-Martinez was facing criminal charges and active immigration proceedings, involving multiple charges of "Operating While Intoxicated" (OWI) and federal administrative proceedings related to Mr. Vidal-Martinez's immigration status within the United States. The ICE Assistant Chief Counsel and the Deputy ICE Chief Counsel exchanged attorney notes, questions, thoughts, strategy and legal analysis related to Mr. Vidal-Martinez's immigration status within the United States.<br><br>**Specifically, on page 77, the ACC and DCC are discussing extraditions related to Mr. Vidal-Martinez; on page 78, the ACC and DCC are discussing extradition hearings related to Mr. Vidal-Martinez's criminal proceedings; on page 91, the ACC and DCC are discussing how to extradite Mr. Vidal-Martinez to Decatur County so that the County can procced with his pending criminal case; on page 92, the ACC is summarizing the pending immigration proceedings and habeas case and providing legal opinions related to the pending cases; on page 93, the ACC and DCC are discussing immigration strategy related to Mr. Vidal-Martinez; on page 99, the ACC and DCC are discussing an active warrant in Howard County for Mr. Vidal-Martinez; on pages 107 and 119, the ACC and DCC are discussing the transfer of Mr. Vidal-Martinez to Decatur County; on page 124, the ICE ACC is summarizing the pending immigration proceedings and habeas case and providing legal opinions related to the pending cases; on page 139, the ACC and DCC are discussing extraditions related to Mr. Vidal-Martinez involving Clay County; on page 161, the ACC and DCC are discussing extradition costs and logistics related to Mr. Vidal-Martinez involving Clay County; on page 220, the ACC and DCC are discussing extradition hearings related to Mr. Vidal-Martinez's criminal proceedings; on pages 540 and 542, the ACC and DCC are discussing extradition legalities related to Mr. Vidal-Martinez; on pages 543 and 553, the ACC and DCC are discussing extradition hearings related to Mr. Vidal-Martinez's criminal proceedings; and on page 577, the ACC and DCC are discussing legal strategies related to Mr. Vidal-Martinez's immigration case and extraditions related to criminal charges against Mr. Vidal-Martinez.**<br><br>These pages also contain personally identifiable information ("PII") of employees (including their names and contact information such as phone number and/or email address). This information was withheld under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reasons for Redactions:** FOIA Exemption (b)(5): The attorney work product privilege protects | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

documents and other memoranda prepared by an attorney in contemplation of litigation. Here, these documents are protected from disclosure because they were prepared by attorneys in anticipation of any such litigation regarding Jesus Vidal-Martinez, either in immigration proceedings or any other proceedings. The information withheld consisted of communications involving an agency attorney - specifically including attorney notes, questions, thoughts, strategy, and legal analysis – in contemplation of litigation both in immigration and in federal court (habeas).

FOIA exemption (b)(5): This exemption also protects information that is pre-decisional and deliberative. These emails between ICE Counsel discuss litigation strategy related to Mr. Vidal-Martinez, who was facing criminal charges and active immigration proceedings that involved multiple charges of "Operating While Intoxicated" (OWI) and federal administrative proceedings related to Mr. Vidal-Martinez's immigration status within the United States The emails contained recommendations for agency action, and such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of law enforcement ("LE") personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting law enforcement personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. In addition, no one consented to the disclosure of their PII and the personal interest of plaintiff is not considered.

| 21-42, 47-48 | 326, 328-330, 332, 334, 338, 372, 383, 422-423, 425, 436, 439, 451, 458, 506-509, 534-535, 554, 570 | Partial | **Description of the Records:** Emails containing information between ICE Assistant Chief Counsel (ACC) and his client, an ICE ERO Deportation Officer (DO).<br><br>**Description of Redactions:** The information being withheld contains attorney work product and attorney client privileged information that was shared between government attorneys and their clients, which is subject to Exemption (b)(5). The withheld information here relates to on-going and active litigation(s). Specifically, Jesus Vidal-Martinez was facing federal removal proceedings related to Mr. Vidal-Martinez's immigration status within the United States. The ICE Assistant Chief Counsel and the Deputy ICE Chief Counsel exchanged attorney notes, questions, thoughts, strategy and legal analysis related to Mr. Vidal-Martinez's immigration status within the United States.<br><br>**Specifically, on pages 326, 328-330, 332, 334, 338, 372, 383, 422-423, 425, 436, 439, 451, 458, 506-509, 534-535, 554, and 570, the Assistant Chief Counsel (ACC) and a Deputy Chief Counsel (DCC) are discussing legal and law enforcement strategies related to Mr. Vidal-Martinez's immigration case and extraditions related to criminal charges against Mr. Vidal-Martinez with the case officer, an Enforcement and Removal Operations Deportation Officer, who is the Officer working on and handling Mr. Vidal-Martinez's immigration case, and the client of the ACC and DCC at the agency. On all of the pages, as signified by the subject on the emails stating "Declaration", are emails related to Mr. Vidal-Martinez's immigration and/or a draft Declaration, to be signed by the Deportation Officer (DO), which were being sent back and forth with comments and questions from the ACC and DCC to the DO, and from the DO back to the ACC and DCC, about the immigration case and/or the draft declaration.**<br><br>These pages also contain personally identifiable information ("PII") of employees (including their names and contact information such as phone number and/or email address). This information was withheld under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reasons for Redactions:** FOIA Exemption (b)(5): The information being withheld contains attorney-client privileged information that was shared between an ICE Assistant Chief Counsel and an ICE ERO Deportation Officer. Specifically, ICE discussed possible legal strategy in regard to Mr. Vidal-Martinez's case, and the discussion is protected from disclosure pursuant to the attorney-client privilege, to include the facts or hypotheticals divulged by ICE to ERO, as well as the opinions and advice given by ERO to ICE based upon, and thus reflecting upon, those facts or hypotheticals. The purpose of this FOIA Exemption is to protect the confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice.<br><br>FOIA Exemption (b)(5): The attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, these documents are | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

4

protected from disclosure because they were prepared by attorneys in anticipation of any such litigation regarding Jesus Vidal-Martinez, either in immigration proceedings or any other proceedings. The information withheld consisted of communications involving an agency attorney - specifically including attorney notes, questions, thoughts, strategy, and legal analysis – in contemplation of litigation both in immigration and in federal court (habeas).

FOIA exemption (b)(5): This exemption also protects information that is pre-decisional and deliberative. These emails between ICE Counsel and ICE Deportation Officers discuss litigation strategy related to Mr. Vidal-Martinez, who was facing criminal charges and active immigration proceedings that involved multiple charges of "Operating While Intoxicated" (OWI) and federal administrative proceedings related to Mr. Vidal-Martinez's immigration status within the United States The emails contained recommendations for agency action, and such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.

FOIA exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of law enforcement ("LE") personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting law enforcement personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. In addition, no one consented to the disclosure of their PII and the personal interest of plaintiff is not considered.

| 49-50 | 575-576 | Partial | **Description of the Records:** Emails containing information between an Assistant United States Attorney and their client, ICE Counsel.<br><br>**Description of Redactions:** The information being withheld contains attorney work product and attorney client privileged information that was shared between government attorneys, which is subject to Exemption (b)(5). The withheld information here relates to on-going and active litigation(s). Specifically, Jesus Vidal-Martinez was facing criminal charges and active immigration proceedings, and federal administrative proceedings related to Mr. Vidal-Martinez's immigration status within the United States. The Assistant United State Attorney and ICE Counsel exchanged attorney notes, questions, thoughts, strategy and legal analysis related to Mr. Vidal-Martinez's immigration status within the United States.<br><br>**Specifically, the ICE Counsel states "here is a draft" on page 576 and then provides thoughts and input related to the attached draft document; and on page 575 the AUSA asks the ICE ACC a follow up question related to the draft document.**<br><br>These pages also contain personally identifiable information ("PII") of employees (including their names and contact information such as phone number and/or email address). This information was withheld under FOIA exemptions (b)(6) and (b)(7)(C).<br><br>**Reasons for Redactions:** FOIA Exemption (b)(5): The information being withheld contains attorney-client privileged information that was shared between an Assistant United State Attorney and their client, ICE Counsel. Specifically, the AUSA and ICE Counsel discussed possible legal strategy in regard to Mr. Vidal-Martinez's case, and the discussion is protected from disclosure pursuant to the attorney-client privilege, to include the facts or hypotheticals divulged by ICE to DOJ, as well as the opinions and advice given by DOJ to ICE based upon, and thus reflecting upon, those facts or hypotheticals. The purpose of this FOIA Exemption is to protect the confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice.<br><br>FOIA Exemption (b)(5): The attorney work product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Here, these documents are protected from disclosure because they were prepared by attorneys in anticipation of any such litigation regarding Jesus Vidal-Martinez, either in immigration proceedings or any other proceedings. The information withheld consisted of communications involving an agency attorney - specifically including attorney notes, questions, thoughts, strategy, and legal analysis – in contemplation of litigation both in immigration and in federal court (habeas). | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) |

| | | | | | |
|---|---|---|---|---|---|
| | | | | FOIA exemption (b)(5): This exemption also protects information that is pre-decisional and deliberative. These emails between ICE Counsel and DOJ Counsel discuss litigation strategy related to Mr. Vidal-Martinez, who was facing criminal charges and active immigration proceedings that involved multiple charges of "Operating While Intoxicated" (OWI) and federal administrative proceedings related to Mr. Vidal-Martinez's immigration status within the United States The emails contained recommendations for agency action, and such pre-decisional and deliberative information is expressly protected by FOIA Exemption (b)(5), which is applied to protect the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency and government personnel resulting in a chilling effect on intra- and inter-agency communications. Further, since this document contains proposals for agency action, which may not have been adopted, release of this document may create confusion regarding what positions have actually been adopted by the agency.<br><br>FOIA exemptions (b)(6) and (b)(7)(C): Under FOIA exemptions (b)(6) and (b)(7)(C), the disclosure of the names and contact information of law enforcement ("LE") personnel could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting law enforcement personnel to harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as targets of law enforcement investigations may begrudge personnel for an indefinite time period and seek revenge; and (3) possibly minimizing their ability to effectively conduct future investigations. The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. As a result, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information. In addition, no one consented to the disclosure of their PII and the personal interest of plaintiff is not considered. | |