**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JESUS VIDAL-MARTINEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 7772** |
| | ) | |
| **U.S. IMMIGRATION AND CUSTOMS** | ) | |
| **ENFORCEMENT and U.S. DEPARTMENT** | ) | |
| **OF HOMELAND SECURITY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jesus Vidal-Martinez has filed suit against the U.S. Immigration and Customs Enforcement (ICE) and the U.S. Department of Homeland Security (DHS). He seeks a court order compelling the defendants to provide certain documents under the Freedom of Information Act (FOIA). Both sides have moved for summary judgment. For the reasons below, the Court grants summary judgment in favor of the defendants and denies Vidal-Martinez's motion for summary judgment.

### Background

**A.     Vidal-Martinez's detention history**

Vidal-Martinez is a non-citizen living in the United States. In June 2020, he became the subject of a federal administrative removal proceeding and was detained at the McHenry County Jail in Illinois. In August 2020, Vidal-Martinez filed a habeas corpus petition in the Northern District of Illinois, contending that his detention was

unconstitutional because it impeded his ability to defend himself in criminal proceedings that were pending in other jurisdictions. At that time, he had three separate criminal matters pending in Indiana, each involving a charge of operating a vehicle while intoxicated.

ICE subsequently reached out to a prosecutor in Decatur County, Indiana to inquire about whether the county was interested in pursuing Vidal-Martinez's criminal matter. The prosecutor informed ICE that the county was interested in proceeding with the case, and ICE and the prosecutor discussed the procedure by which Vidal-Martinez could be transferred to Decatur County. Specifically, ICE informed the prosecutor that he would need to seek a writ of habeas corpus *ad prosequendum* from a court. ICE also provided the prosecutor with templates that he could use in drafting the petition.

In September 2020, ICE transported Vidal-Martinez from the McHenry County Jail to a jail in Clay County, Indiana. The next day, the Decatur Superior Court issued a writ of habeas corpus *ad prosequendum*. Vidal-Martinez was subsequently transferred to Decatur County.

After the transfer, ICE filed a motion to dismiss Vidal-Martinez's habeas corpus case, contending that it no longer had custody of him. Another judge in this District denied ICE's motion. Dkt. no. 38-1, ex. 1 at 2. The court reasoned that it still had jurisdiction even though Vidal-Martinez was in the custody of Decatur County "because Vidal-Martinez was detained in this district when he filed his petition and the State only has temporary custody over him for the duration of his criminal matter." *Id.* The court noted that custody pursuant to a writ of habeas corpus *ad prosequendum* "is only temporary, and the sending sovereign [in this case, ICE] maintains primary custody."

*Id.* at 11.

Following the resolution of his criminal matter in Decatur County, Vidal-Martinez was transferred back to ICE detention.  He was put in the Pulaski County Detention Center in southern Illinois.  Once there, he filed an amended habeas corpus petition in the Southern District of Illinois, and his habeas corpus case was transferred from the Northern District to the Southern District.  In May 2021, a judge of the Southern District granted the petition and ordered Vidal-Martinez to be released.  *Vidal-Martinez v. Acuff*, No. 21 C 224, 2021 WL 1784948, at *1 (S.D. Ill. May 5, 2021).

**B.      Vidal-Martinez's FOIA requests**

This case concerns two FOIA requests that Vidal-Martinez filed with ICE in late 2020.  In the first request, filed on October 9th, 2020, he sought "email communications and other notes or reports" between ICE and Decatur County officials, and between ICE and the McHenry County and Clay County jails.  Am. Compl. ¶ 17.  In the second request, filed on December 30, 2020, he sought all internal ICE communications regarding his transfer to Decatur County.  *Id*. ¶ 23.

ICE searched its records and provided a total of 561 pages of emails in two productions on March 12, 2021, and April 9, 2021.  The disclosed emails included redactions.  ICE contends that these redactions were proper withholdings under three statutory exemptions for privileged or private information.  Vidal-Martinez disagrees.

The parties' summary judgment motions concern a 51-page subset of these emails.  In his cross-motion for summary judgment, Vidal-Martinez asked the Court to conduct an *in camera* review of the disputed emails.  The government indicated in its response briefing that it did not object to such a review.  Accordingly, on May 26, 2022,

3

the Court ordered the government to turn over unredacted versions of the disputed emails.  The Court has reviewed these documents as part of its adjudication of the cross-motions for summary judgment.

## Discussion

FOIA requires federal agencies to make their records available to the public upon request.  5 U.S.C. § 552(a)(3).  The statute lists certain exemptions to this general rule, but the agency bears the burden to prove that any specific documents fall within an exemption.  *Silets v. U.S. Dep't of Justice*, 945 F.2d 227, 228 (7th Cir. 1991).  In determining whether the claimed exemptions apply, a court may conduct an *in camera* review of the disputed documents.  *Id.* at 229.

ICE contends that it made the redactions under three statutory exemptions.  The first is the exemption in subsection (b)(5), which protects documents that would not be available by law to a party in litigation with the agency.  *See* 5 U.S.C. § 552(b)(5).  The second is the exemption in subsection (b)(6), which protects personnel and medical files for which disclosure would result in an unwarranted invasion of personal privacy.  *See id.* § 552(b)(6).  The last is the exemption in section (b)(7)(C), which protects records or information compiled for law enforcement purposes for which disclosure would result in an unwarranted invasion of personal privacy.  *See id.* § 552(b)(7)(C).

Vidal-Martinez disputes that any of these exemptions apply.  In addition, he argues that ICE failed to appropriately disclose segregable information as required by FOIA.  He also challenges the declaration and *Vaughn* index[1] that ICE relies upon in

---

[1] A *Vaughn* index provides a description of each redaction and applicable exemption in a disclosure.  *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

support of its motion for summary judgment.

On the last issue, the Court overrules the argument as moot. The agency declaration and *Vaughn* Index were provided to the Court prior to the disclosure of the unredacted documents to summarize the redacted information and explain why that information was withheld. Given the Court's *in camera* review of the documents in question, it finds it unnecessary to rely on the declaration and *Vaughn* Index to adjudicate the motions.

On the remaining issues, the Court disagrees with Vidal-Martinez and concludes that ICE's withholdings were proper under the exemptions listed above. It also concludes that ICE properly disclosed all segregable information as required by FOIA.

**A.     Statutory exemptions**

ICE invokes three FOIA subsections to justify the contested withholdings: (b)(5), (b)(6), and (b)(7)(C). The Court first addresses the withholdings under subsection (b)(5) before addressing together those withheld under exemptions (b)(6) and (b)(7)(C).

**1.     Withholdings under subsection (b)(5)**

Subsection (b)(5) protects "interagency and or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, the (b)(5) exemption protects documents that are "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). ICE claims to have redacted information protected by the attorney-client privilege, the attorney work-product privilege, and the deliberative process privilege.

The work-product privilege protects "documents and tangible things that are

prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice."  *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 619 (7th Cir. 2010).  And the deliberative process privilege protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Sears, Roebuck & Co.*, 421 U.S. at 150.

Vidal-Martinez's main argument in support of his contention that these emails are not privileged is that the crime-fraud exception applies.  "The crime-fraud exception helps to ensure that the attorney-client privilege does not protect communications made 'in furtherance of a crime or fraud.'"  *United States v. Boender*, 649 F.3d 650, 655 (1995) (quoting *United States v. Zolin*, 491 U.S. 554, 563 (1989)).  To invoke the exception, the party seeking to defeat the privilege must "present prima facie evidence that gives color to the charge by showing some foundation in fact."  *United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007) (citation and quotation marks omitted).

Following examination of the redacted emails, the Court concludes that the crime-fraud exception is inapplicable.  The relevant portions of the emails consist of conversations between ICE attorneys and a Decatur County prosecutor discussing whether and how to transfer Vidal-Martinez to the county for his criminal proceedings. The ICE attorneys discuss the benefits of transferring him—namely, they believed a conviction in the state court cases would strengthen ICE's case for deportation.  They

6

also opine that Vidal-Martinez's transfer to Decatur County would result in the federal court losing jurisdiction over the habeas corpus case. This was not the case, as the court later concluded, but there is no evidence that ICE deliberately misled the court when it argued that the habeas case should be dismissed. Based on its statements in the emails, the ICE attorneys appear to have genuinely believed that transfer of Vidal-Martinez to another jurisdiction under a writ of habeas corpus *ad prosequendum* would lead to dismissal of the habeas corpus case. For these reasons, the Court concludes that the crime-fraud exception is inapplicable.[2]

Vidal-Martinez also contends that the work-product privilege and deliberate process privileges do not apply to certain withheld items because these privileges protect only predecisional documents and some of the emails were sent after the decision to transfer him was made. Specifically, Vidal-Martinez contends that certain redacted communications on September 18, 2020, were not predecisional because the decision to transfer him to Decatur County was made on September 14, 2020. The Court disagrees. Although ICE reached out to Decatur County on September 14, 2020, it had not yet decided to transfer him at that point. Rather, it reached out to Decatur County merely to gauge whether the county would be interested in proceeding with Vidal-Martinez's criminal case. According to the communications, it was not until September 18, 2020, that Decatur County confirmed that it would file the petition for a writ and seek Vidal-Martinez's transfer. *See* dkt. no. 38-8 at ECF p. 9 of 29 ("Just got

---

[2] With respect to the deliberate process privilege, Vidal-Martinez also argues that the exemption is not applicable where the documents "reflect government misconduct." Pl.'s Mot. & Resp. at 19. Because this argument essentially replicates the argument regarding the crime-fraud exception, the Court overrules it for the same reason described above.

off the phone with the Sheriff.  He is on board.").  The Court thus concludes that the disputed communications were predecisional and therefore privileged.

For these reasons, the Court finds that the information redacted under subsection (b)(5) was properly withheld under that subsection.

### 2. Withholdings under subsections (b)(6) and (b)(7)(C)

Subsections (b)(6) and (b)(7)(C) protect personal privacy.  The former encompasses "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The latter covers information "compiled for law enforcement purposes if their disclosure 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'"  *Baker v. FBI*, 863 F.3d 682, 683–84 (7th Cir. 2017) (quoting *id.* § 552(b)(7)(C)).  To determine whether disclosure would result in an unwarranted invasion of personal privacy, the court must balance the privacy interest against the public interest in disclosure.  *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171 (2004).

Again, Vidal-Martinez argues that the exemptions do not apply because they do not protect government impropriety.  As previously discussed, however, the Court did not find any evidence of impropriety in the disputed emails.  The Court thus overrules this argument.

Vidal-Martinez also argues that these exemptions do not apply because the privacy interest cited by ICE is outweighed by the public interest in knowing the government is properly litigating constitutional and habeas corpus matters.  The problem with this argument is that Vidal-Martinez does not sufficiently explain how

disclosure of the redacted material would further the stated public interest.  The disputed withholdings under the (b)(6) and (b)(7)(C) exemptions contained the names of the government employees (from ICE and Decatur County) who participated in the communications.  It is hard to see how knowing the names of these individuals would assist in determining whether the government properly litigated Vidal-Martinez's habeas corpus case.  The existence of any government impropriety would depend on the content of the communications, not on the name of the specific government employees making the communications.  Accordingly, the Court overrules this argument.

**B.      Segregable information**

Even if an agency properly withholds information under a statutory exemption, the agency must still disclose all segregable information.  5 U.S.C. § 552(b).  Vidal-Martinez contends that ICE failed to meet this requirement.  The Court disagrees. Based on the Court's *in camera* review of the disputed communications, ICE disclosed all segregable information.  The redactions were line-by-line and specific, and the agency did not withhold any more than justified under the statutory exemptions.

**Conclusion**

For the foregoing reasons, the Court grants the defendants' motion for summary judgment [24] and denies the plaintiff's motion for summary judgment [35].  The Court directs the Clerk to enter judgment dismissing the plaintiff's claims with prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  June 16, 2022

9